# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM,<br><br>    Plaintiff,<br><br>    vs.<br><br>C. McCABE, et al.,<br><br>    Defendants. | )  1:13cv01779 AWI DLB PC<br>)<br>)<br>)  **ORDER DIRECTING PLAINTIFF TO**<br>)  **FILE AMENDED COMPLAINT OR**<br>)  **NOTIFY COURT OF HIS WILLINGNESS**<br>)  **TO PROCEED ONLY ON COGNIZABLE**<br>)  **CLAIMS**<br>)<br>)  **THIRTY-DAY DEADLINE**<br>) |

Plaintiff Bryan E. Ransom ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action.[1]  Plaintiff filed this action on November 5, 2013.  Plaintiff names the following Defendants: Chief Medical Officers C. McCabe and T. Macias, Doctors E. Clark, R. Gill, J. Sao and O. Beregovskya, Endocrinologist E. Klass, Nurses P. Rouch, D. Strome, R. Herrera, S. Dougherty, J. Faldon and J. Kaiser, Departmental Review Board Members S. Hubbard, D. Speer, G. Marshall and S. Albritton, Wardens C. Gibson, R. Lopez and S. Hubbard, Correctional Sergeant E. Molina, Correctional Officers J. Faldon, Quillen, W. Hayward, D. Riley, G. Torres and H. Rocha, Dietician M. Brooks and numerous John Does.

---

[1] Pursuant to Court order dated June 9, 2010, Plaintiff was deemed to be a prisoner with three strikes or more and therefore unable to proceed in forma pauperis.  28 U.S.C. § 1915(g).  However, on December 19, 2013, the Court determined that Plaintiff met the imminent danger exception for purposes of 1915(g).

A.      **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235

(9th Cir. 2009); <u>Jones</u>, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678; <u>Moss</u>, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is confined in the Secured Housing Unit ("SHU") at Corcoran State Prison ("CSP"), where the events at issue in this action occurred.  Plaintiff states that he is a self-proclaimed prison activist.

*Hunger Strike Allegations*

Beginning on or around July 1, 2011, Plaintiff was a participant in a statewide indefinite prisoner hunger strike.  The hunger strike was launched in response to the conditions in SHUs throughout CDCR.  Plaintiff contends that the refusal to eat all solid-foods does not violate any rules or laws.  Plaintiff also alleges that he has an autonomous Fourteenth Amendment right to refuse solid-food if he so chooses, and a First Amendment right to peacefully protest.

The 2011 hunger strike was suspended for negotiation on October 15, 2011.[2]

On October 13, 2012, Plaintiff states that he placed prison officials on notice that he had resumed his solid-food hunger strike.  In response, Defendants Faldon and Molina told Plaintiff that he would not be allowed to receive his daily state issue of food as long as he was on his solid-food hunger strike.  Plaintiff showed them a letter from the Prison Law Office indicating that CDCR Headquarters had agreed that prison officials would not deny hunger-strikers their daily state issue of food items.  Defendant Molina told Plaintiff that he had not heard about that agreement and until he did, Plaintiff would not be receiving any state issued food.  Subsequently, Defendants Faldon, Molina, Torres, Quillen and Does 1-10 withheld Plaintiff's daily state issued food for eleven consecutive days.

---

[2] The 2011 hunger strike is the subject of <u>Ransom v. Aguirre</u>, 1:12-cv-01343 AWI DLB PC.

To cover up these actions, Defendants Torres, Faldon, Quillen and Does 1-10 placed false entries into Plaintiff's record indicating that he had refused his meals.

Plaintiff alleges that in addition to his solid-food hunger strike, he has life-threatening medical conditions, including hypertension, high cholesterol and Type II diabetes, that require a well-balanced and nutritious diet.  Between October 13, 2012, and October 27, 2012, during Plaintiff's daily medical examinations, Plaintiff repeatedly told Defendants Strome, Faldon, Herrera, Gill, Dougherty, Kaiser and Does 11-20 that because of his solid-food hunger strike, prison officials were withholding food and that he was in need of medical intervention.  Even though his complaint was consistent with his constant and excessive weight loss, these Defendants refused to intervene with a medically substituted liquid diet.  Defendant Gill told Plaintiff that even though there were provisions for him to provide Plaintiff with liquid supplements, Defendant McCabe and John Does 21-30 prohibited him from doing so to accelerate starvation and end the hunger strike as soon as possible.

On October 27, 2012, Plaintiff suffered complications from malnutrition, acute renal failure and dehydration and was transported to the emergency room at Bakersfield Mercy Hospital and admitted.  Plaintiff told Dr. Muddassir what was going on and he treated Plaintiff with numerous IV drips, medications and an 1,800 calorie non-solid food diet.  Plaintiff was discharged on October 29, 2012, with the recommendation that he be allowed to choose his diet.

When he returned, Defendants Faldon, Torres, Molina, Quillen and Does 1-10 resumed their practice of withholding Plaintiff's daily state issued food for four consecutive days.

On November 2, 2012, during his medical appointment, Plaintiff told Dr. Wang that prison officials were withholding food since October 13, 2012, and that he needed medical intervention.  Dr. Wang admitted Plaintiff to the hospital at Corcoran State Prison and placed him on a diet of puree and the liquid supplement "Nutren."

On November 12, 2012, even though Plaintiff had not fully recovered, Defendants Sao and Brooks discontinued his non-solid food diet and discharged him back to the SHU because they felt Plaintiff was manipulating the Medical Department to support his hunger strike.

On the evening of November 12, 2012, while escorting Plaintiff back to the SHU, Defendant Hayward asked Plaintiff why he had been in the hospital. Plaintiff told him why, and Defendant Hayward said that he was in charge of the building where Plaintiff was being rehoused and that the same policy applied. He told Plaintiff that until he abandoned his hunger strike, he would not receive his daily issue of food.

Defendants Hayward, Riley, Rocha and Does 31-40 then withheld Plaintiff's daily state issue of food for at least seventy days.

On November 15, 2012, during Plaintiff's medical examination, he told Defendant Strome that prison officials were withholding food. Defendant Strome intervened by substituting Plaintiff's diet with a medical liquid diet of 500 calories per day for thirty days.

On November 20, 2012, due to Plaintiff's continued excessive weight loss, Defendant Strome increased his liquid diet to 750 calories for thirty days. Plaintiff alleges that this increase to 750 was still "well-below" the minimum daily requirement of 1,800 calories per day. Plaintiff continued to lose excessive weight and experience significant pain.

Between November 27, 2012, and December 12, 2012, Plaintiff continuously asked Defendants Rouch and Gill to increase his medical diet to 1,800. They refused. Defendant Rouch told Plaintiff that if it were up to her, he would not receive any medical liquid diet at all. Defendant Gill continued to tell Plaintiff that he was prohibited from increasing his liquid diet so that the strike would end.

On December 11, 2012, two weeks prior to the expiration of the order, Defendant Gill discontinued the medical liquid diet, stating that he was getting too many emails and calls from

"higher-ups."  Compl. 23.  Defendants Strome and Rouch did not intervene in the premature discontinuation.

On December 11, 2012, Plaintiff was admitted to the CSP Acute Care Hospital due to excessive weight loss, acute renal failure and dehydration.  He was given IV fluids and prescribed a full liquid diet.

On December 12, 2012, Plaintiff was interviewed by Defendants Sao and Brooks, and he told them that in retaliation for his hunger strike, prison officials were withholding food since October 13, 2012.  On December 13, 2012, Defendants Sao and Brooks discharged Plaintiff with an order that he be placed on a 500-calorie per day diet of the liquid supplement "Glytrol."  Plaintiff alleges that this was well below the 1,800 calorie daily minimum and caused him to lose excessive weight and experience significant pain.

Between December 13, 2012, and December 19, 2012, Plaintiff continuously asked Defendant Gill to increase his Glytrol to 1,800 calories.  Defendant Gill refused, again citing the "higher-ups" policy to quickly end the hunger strike.

On December 20, 2012, Plaintiff was transported to CSP Hospital for a Hepatitis C consultation and the start of scheduled treatment.  Defendant Clark told Plaintiff that he would not begin treatment until he ended his hunger strike.  At this time, Plaintiff states that he has been on a solid-food hunger strike for over 120 days and Defendant Clark's refusal to begin treatment caused irreparable physical harm.

On December 21, 2012, Plaintiff had a telemedicine consultation with Defendant Klass, an endocrinologist, regarding Plaintiff's Type II diabetes.  He told Defendant Klass that in retaliation for his hunger strike, prison officials have been withholding state issued food for the last 69 days and that CSP was maintaining him on a deficient 500 calorie liquid diet of Boost.  Defendant Klass recommended that Plaintiff's Boost be increased to at least 2,200 calories per day and that Plaintiff return for further consultation in two weeks.

Plaintiff did not receive the increased amount of Boost until December 29, 2012.

On January 11, 2013, during Plaintiff's medical consultation, Defendant Gill told Plaintiff that Defendants McCabe and Does 21-30 ordered him to immediately discontinue Plaintiff's diet of Boost as a means to end the strike.  Defendants Klass, Beregovskya and Gill did not do anything to intervene in Defendant McCabe's premature discontinuation of Plaintiff's medically prescribed diet.

*Due Process Allegations*

Plaintiff's allegations then switch to August 27, 2008, when he alleges that Departmental Review Board ("DRB") members sentenced Plaintiff to an indeterminate SHU term for "refusal to program" without an opportunity to be heard.  On March 16, 2009, Defendant Board Members Hubbard, Speer, Marshall and Albritton held a hearing with Plaintiff and ordered that he be retained in the SHU for two more years.  By March 16, 2011, Defendants Hubbard, Speer, Marshall, Albritton and Does 31-40 had not returned Plaintiff to the DRB with a placement recommendation.  On August 30, 2011, Defendants Does 31-40 referred Plaintiff's case to the DRB five months after Plaintiff's two year term was set to expire.

On October 5, 2011, the DRB requested that Does 31-40 provide additional information. They did not do so until April 2013.  Plaintiff alleges that Defendants Hubbard, Speer, Marshall, Albritton and Does 31-40 have retained Plaintiff in the SHU for a total of two years beyond the initial term without an opportunity to be heard.

*Access to Courts Allegations*

Plaintiff next returns to February 2011, when he contends he filed a Complaint/Petition for Writ of Mandate in the Kings County Court for the replacement, return or reimbursement of thirteen boxes of legal property.  On June 27, 2012, the court ordered Plaintiff to amend his complaint within thirty days.  On June 28, 2012, Plaintiff gave his amended complaint to Defendant Faldon for delivery to the law library for photocopying and mailing.  Defendant

7

Faldon told him that everything was taken care of.  After the thirty day period, Plaintiff learned that Defendant Faldon failed to deliver the complaint to the prison law library.  Plaintiff immediately requested an extension, but it was denied and his case was dismissed.  Plaintiff alleges that Defendant Faldon had a responsibility to deliver the complaint to the law library, and his failure to do so denied him access to the courts.

Based on these allegations, Plaintiff alleges the following causes of action:

1.      Violation of the First and Eighth Amendments, negligence and intentional infliction of emotional distress ("IIED") against Defendants Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, Does 1-10 and Does 31-40 based on their withholding of food;

2.      Violation of the First and Eighth Amendments, negligence and IIED against Defendants McCabe and Does 21-30 based on their policy of instructing other Defendants to withhold food;

3.      Violation of the First and Eighth Amendments, negligence, medical malpractice and IIED
against Defendants Strome, Faldon, Herrera, Gill, Dougherty, Kaiser, Brooks, Sao, Gill, Rouch, Klass, Beregovskya and Does 11-20 based on their refusal to increase his liquid diet, discontinuation of his liquid diet and/or failure to intervene in the discontinuation of his liquid diet

4.      Violation of the First and Eighth Amendments, negligence, medical malpractice and IIED against Defendant Clark for refusal to treat Plaintiff's Hepatitis C;

5.      Violation of Due Process and negligence against Defendants Hubbard, Speer, Marshall, Albritton and Does 31-40 based on Plaintiff's SHU term; and

6.      Violation of the First Amendment against Defendant Faldon based on denial of access to the courts.

C.      **ANALYSIS**

      1.      Allegations and Defendants Related to Due Process and Access to Court Claims

      Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  As an initial matter, Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Ins. Co. of North America, 623 F.3d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

      This action concerns Plaintiff's allegations relating to his 2012 hunger strike, and it was based on these allegations that the Court found an exception to 1915(g).  However, Plaintiff's complaint also includes due process allegations related to his SHU term and an access to courts claim.  Neither of these claims is related to the subject matter of this action.  Allowing these claims to proceed in this action would effectively result in the combination of three distinct actions.

      Accordingly, this action may not proceed with (1) due process claims related to his SHU term; or (2) an access to courts claim.  These claims, as well as Defendants Hubbard, Speer, Marshall and Albritton, should be dismissed from this action.  Plaintiff may file a new action raising these claims if he so desires, subject to the limitations imposed by 1915(g).

      2.      Defendants Macias, Gibson, Lopez and Hubbard

      Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue.  Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009);

Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of
Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.
2002).  Liability may not be imposed under a theory of *respondeat superior*, and there must exist
some causal connection between the conduct of each named defendant and the violation at issue.
Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-
75 (9th Cir. 2013); Moss v. U.S. Secret Service, 711 F.3d 941, 967-68 (9th Cir. 2013); Lacey v.
Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202,
1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

Defendants in supervisory positions, such as Defendants Hubbard, Macias, Gibson and
Lopez, may only be held liable if they "participated in or directed the violations, or knew of the
violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989);
accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101
(2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County
School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d
1189, 1204 (9th Cir. 1997)

Here, although Plaintiff lists Defendant Macias, Gibson, Lopez and Hubbard as
Defendants, he does not include any factual allegations against them.[3]  Accordingly, Plaintiff
fails to state a claim against Defendants Macias, Gibson, Lopez and Hubbard.

3.    First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to
petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532
(9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.
Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First
Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

[3] Plaintiff's only allegations against Defendant Hubbard relate to the due process claim, which is not properly part of
this action.

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

*Withholding of State Issued Food*

At this stage of the proceeding, Plaintiff has stated a retaliation claim against Defendants Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, Does 1-10 and Does 31-40.  Plaintiff also states a retaliation claim against Defendants McCabe and Does 21-30 based on their policy of instructing Defendants to withhold food.

*Refusal to Increase Liquid Diet*

Plaintiff also states a claim against Defendants Strome, Brooks, Sao and Gill based on their refusal to increase Plaintiff's liquid diet.[4]

*Discontinuation of Liquid Diet and/or Failure to Intervene*

Plaintiff's allegations against Defendants Sao, Brooks, Gill, Strome, Rouch, Faldon, Herrera, Dougherty, Kaiser and Does 11-20 are sufficient to state a retaliation claim against them.

However, Plaintiff fails to state a claim against Defendants Klass and Beregovskya based on their failure to intervene.  Plaintiff does not allege that he told either Klass or Beregovskya that prison officials were taking any adverse action against him.

*Failure to Treat Hepatitis C*

Plaintiff also fails to state a claim against Defendant Clark based on his refusal to treat his Hepatitis C.  Plaintiff alleges that Defendant Clark reviewed his file and told him that he could

---

[4] In Ransom v. Aguirre, 1:12-cv-01343 AWI DLB, the Court found that a refusal to increase Plaintiff's 1,125 calorie liquid diet was not a sufficient adverse action to support a retaliation claim.  Plaintiff's claims here involve liquid diets of 500 and 750 calories.

not start treatment until he ended his hunger strike.  Plaintiff does not allege, however, that Defendant Clark refused to treat him *because of* his hunger strike.

      4.      <u>Eighth Amendment- Conditions of Confinement</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety.  <u>Farmer</u>, 511 U.S. at 834.  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Hudson</u>, 503 U.S. at 9.

Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, McCabe, Does 1-10, 21-30 and 31-40 based on their withholding of food.

5.      Eighth Amendment Medical Care

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

*Refusal to Increase Liquid Diet*

Plaintiff states a claim against Defendants Strome, Brooks, Sao and Gill based on their refusal to increase Plaintiff's liquid diet.

13

*Discontinuation of Liquid Diet/Failure to Intervene*

Plaintiff's allegations against Defendants Sao, Brooks, Gill, Strome, Rouch, Faldon, Herrera, Dougherty, Kaiser, and Does 11-20 are sufficient to state an Eighth Amendment claim against them.

However, Plaintiff fails to state a claim against Defendants Klass and Beregovskya based on their failure to intervene. Plaintiff does not allege that he told either Klass or Beregovskya that prison officials were taking any adverse action against him.

*Failure to Treat Hepatitis C*

Plaintiff's allegations against Defendant Clark are sufficient to state an Eighth Amendment claim against him.

7.   Negligence

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.1997).

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

14

*Withholding of Food*

Plaintiff states a negligence claim Defendants Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, Does 1-10 and Does 31-40.   Plaintiff also states a negligence claim against Defendants McCabe and Does 21-30 based on their policy of instructing Defendants to withhold food.

*Refusal to Increase Liquid Diet*

Plaintiff states a negligence claim against Defendants Strome, Brooks, Sao and Gill based on their refusal to increase Plaintiff's liquid diet.

*Discontinuation of Liquid Diet/Failure to Intervene*

Plaintiff's allegations against Defendants Sao, Brooks, Gill, Strome, Rouch, Faldon, Herrera, Dougherty, Kaiser, and Does 11-20 are sufficient to state a negligence claim against them.

However, Plaintiff fails to state a negligence claim against Defendants Klass and Beregovskya based on their failure to intervene.  Plaintiff does not allege that he told either Klass or Beregovskya that prison officials were taking any adverse action against him.

*Failure to Treat Hepatitis C*

Plaintiff's allegations against Defendant Clark are sufficient to state a negligence claim against him.

8.     Intentional Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v.

Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622.

### Withholding of Food

Plaintiff states an IIED claim Defendants Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, Does 1-10 and Does 31-40.  Plaintiff also states an IIED claim against Defendants McCabe and Does 21-30 based on their policy of instructing Defendants to withhold food.

### Refusal to Increase Liquid Diet

Plaintiff states an IIED claim against Defendants Strome, Brooks, Sao and Gill based on their refusal to increase Plaintiff's liquid diet.

### Discontinuation of Liquid Diet/Failure to Intervene

Plaintiff's allegations against Defendants Sao, Brooks, Gill, Strome, Rouch, Faldon, Herrera, Dougherty, Kaiser, and Does 11-20 are sufficient to state an IIED claim against them.

However, Plaintiff fails to state an IIED claim against Defendants Klass and Beregovskya based on their failure to intervene.  Plaintiff does not allege that he told either Klass or Beregovskya that prison officials were taking any adverse action against him.

### Failure to Treat Hepatitis C

Plaintiff's allegations against Defendant Clark are sufficient to state an IIED claim against him.

9.   Medical Malpractice

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's

16

negligence." <u>Avivi v. Centro Medico Urgente Med. Ctr.</u>, 159 Cal.App.4th 463, 468, n.2 (2008) (internal quotations and citation omitted).

Construed liberally, Plaintiff has stated a claim for medical malpractice against Defendants Sao, Brooks, Gill, Strome, Rouch, Faldon, Herrera, Dougherty, Kaiser, Clark and Does 11-20.

However, Plaintiff fails to state a medical malpractice claim against Defendants Klass and Beregovskya based on their failure to intervene. Plaintiff does not allege that he told either Klass or Beregovskya that prison officials were taking any adverse action against him.

## D.    CONCLUSION AND ORDER

The Court finds the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Molina, Torres, Quillen, Hayward, Brooks, Gill, CO J. Faldon, Riley, Rocha, McCabe, Strome, Sao, Rouch, Dougherty, Nurse J. Faldon, Kaiser, Herrera and Does 1-30; (2) inhumane conditions of confinement in violation of the Eighth Amendment against Defendants Molina, Torres, Quillen, Hayward, CO J. Faldon, Riley, Rocha, McCabe and Does 1-10, 21-30 and 31-40; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Strome, Brooks, Sao, Gill, Rouch, Nurse J. Faldon, Herrera, Dougherty, Kaiser, Clark and Does 11-20; (4) negligence against Defendants CO J. Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, McCabe, Strome, Brooks, Sao, Gill, Rouch, Nurse J. Faldon, Herrera, Dougherty, Kaiser, Clark and Does 1-30; (5) intentional infliction of emotional distress against Defendants CO J. Faldon, Molina, Torres, Quillen, Hayward, Riley, Rocha, McCabe, Strome, Brooks, Sao, Gill, Rouch, Nurse J. Faldon, Herrera, Dougherty, Kaiser, Clark and Does 1-30 and (6) medical malpractice against Defendants Sao, Brooks, Gill, Strome, Rouch, Nurse J. Faldon, Herrera, Dougherty, Kaiser, Clark and Does 11-20.

It does not state any other claims against any other Defendants.  Plaintiff may either (1) proceed on his cognizable claim, identified above, or (2) file an amended complaint curing the deficiencies identified in this order.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  Further, Plaintiff is notified that his amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff is willing to proceed on his cognizable claim, he may notify the Court in writing.  The Court will then dismiss Plaintiff's other claims and Defendants, and provide Plaintiff with further instructions regarding service of a summons and the complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.      Within thirty (30) days from the date of service of this order, Plaintiff must either:

a.      File an amended complaint curing the deficiencies identified by the Court in this order, or

b.      Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claim identified above.

3.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   __**March 26, 2014**__                        _____/s/ Dennis L. Beck_
                                                          UNITED STATES MAGISTRATE JUDGE

19