1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRYAN E. RANSOM,                           No.  1:13-cv-01779 DAD DLB PC

12                   Plaintiff,                 FINDINGS AND RECOMMENDATIONS
                                                REGARDING DEFENDANTS' MOTION
13           v.                                 FOR SUMMARY JUDGMENT
                                                (Document 72)
14   McCABE, et al.,
                                                THIRTY-DAY DEADLINE
15                   Defendants.

16

17           Plaintiff Bryan E. Ransom ("Plaintiff") is a prisoner proceeding pro se and in forma

18   pauperis in this civil rights action.  Plaintiff filed this action on November 5, 2013, and he filed a

19   First Amended Complaint on July 10, 2014.  This action proceeds against numerous Defendants

20   for violation of the First and Eighth Amendments, as well as causes of action under state law.[1]

21           On April 8, 2016, Defendants Clark, Dougherty, Faldon, Gill, Hayward, Herrera, Kaiser,

22   McCabe, Molina, Quillen, Riley, Rocha, Rouch, Sao and Torres filed the instant motion for

23   partial summary judgment based on Plaintiff's failure to exhaust his claims under federal law.[2]

24   Defendant Strome joined in the motion on May 6, 2016.  Plaintiff did not file an opposition.  The

25   motion is therefore deemed suitable for decision pursuant to Local Rule 230(l).

26   _____

     [1]  Defendant Brooks is the only Defendant that has not appeared.  A proof of service was filed showing he was served
27   on July 6, 2015.

28   [2]  Defendants' motion included the requirements for opposing summary judgment.  ECF No. 72-3.  Plaintiff has not
     submitted a change of address, and documents from the Court have not been returned.

                                                    1

A.     **PLAINTIFF'S ALLEGATIONS**

Beginning on or around July 1, 2011, Plaintiff was a participant in a statewide indefinite prisoner hunger strike.  The hunger strike was launched in response to the conditions in Security Housing Units throughout the California Department of Corrections and Rehabilitation ("CDCR").  The 2011 hunger strike was suspended for negotiations on October 15, 2011.[3]

On October 13, 2012, Plaintiff states that he placed prison officials on notice that he had resumed his solid-food hunger strike.  In response, Defendants Faldon and Molina told Plaintiff that he would not be allowed to receive his daily state issue of food as long as he was on his solid-food hunger strike.  Plaintiff showed them a letter from the Prison Law Office indicating that CDCR Headquarters had agreed that prison officials would not deny hunger-strikers their daily state issue of food items.  Defendant Molina told Plaintiff that he had not heard about that agreement and until he did, Plaintiff would not be receiving any state issued food.  Defendants Faldon, Molina, Torres and Quillen withheld Plaintiff's daily state issued food for eleven consecutive days.  To cover up these actions, Defendants Torres, Faldon and Quillen placed false entries into Plaintiff's record indicating that he had refused his meals.

Plaintiff alleges that in addition to his solid-food hunger strike, he has life-threatening medical conditions, including hypertension, high cholesterol and Type II diabetes, that require a well-balanced and nutritious diet.  Between October 13, 2012, and October 27, 2012, during Plaintiff's daily medical examinations, Plaintiff repeatedly told Defendants Strome, Faldon, Herrera, Gill, Dougherty and Kaiser that because of his solid-food hunger strike, prison officials were withholding food and that he was in need of medical intervention.  Even though his complaints were consistent with his constant and excessive weight loss, Defendants refused to intervene with a medically substituted liquid diet.  Defendant Gill told Plaintiff that even though there were provisions for him to provide Plaintiff with liquid supplements, Defendant McCabe prohibited him from doing so to accelerate starvation and end the hunger strike as soon as possible.

---

[3] The 2011 hunger strike is the subject of <u>Ransom v. Aguirre</u>, 1:12-cv-01343 DAD DLB PC.  The action is currently in discovery.

2

On October 27, 2012, Plaintiff suffered complications from malnutrition, acute renal failure and dehydration and was transported to the emergency room at Bakersfield Mercy Hospital and admitted.  Plaintiff was discharged on October 29, 2012, with the recommendation that he be allowed to choose his diet.

When he returned, Defendants Faldon, Torres, Molina and Quillen resumed their practice of withholding Plaintiff's daily state issued food for four consecutive days.

On November 2, 2012, during his medical appointment, Plaintiff told Dr. Wang that prison officials were withholding food since October 13, 2012, and that he needed medical intervention.  Dr. Wang admitted Plaintiff to the hospital at Corcoran State Prison and placed him on a diet of puree and the liquid supplement "Nutren."

On November 12, 2012, even though Plaintiff had not fully recovered, Defendants Sao and Brooks discontinued his non-solid food diet and discharged him back to the SHU because they felt Plaintiff was manipulating the Medical Department to support his hunger strike.

On the evening of November 12, 2012, while escorting Plaintiff back to the SHU, Defendant Hayward asked Plaintiff why he had been in the hospital.  Plaintiff told him why, and Defendant Hayward said that he was in charge of the building where Plaintiff was being rehoused and that the same policy applied.  He told Plaintiff that until he abandoned his hunger strike, he would not receive his daily issue of food.  Defendants Hayward, Riley and Rocha then withheld Plaintiff's daily state issue of food for at least seventy days.

On November 15, 2012, during Plaintiff's medical examination, he told Defendant Strome that prison officials were withholding food.  Defendant Strome intervened by substituting Plaintiff's diet with a medical liquid diet of 500 calories per day for thirty days.

On November 20, 2012, due to Plaintiff's continued excessive weight loss, Defendant Strome increased his liquid diet to 750 calories for thirty days.  Plaintiff alleges that this increase to 750 was still "well-below" the minimum daily requirement of 1,800 calories per day.  Plaintiff continued to lose excessive weight and experience significant pain.

3

Between November 27, 2012, and December 12, 2012, Plaintiff continuously asked Defendants Rouch and Gill to increase his medical diet to 1,800 calories.  They refused. Defendant Rouch told Plaintiff that if it were up to her, he would not receive any medical liquid diet at all.  Defendant Gill continued to tell Plaintiff that he was prohibited from increasing his liquid diet so that the strike would end.

On December 11, 2012, two weeks prior to the expiration of the order, Defendant Gill discontinued the medical liquid diet, stating that he was getting too many emails and calls from "higher-ups."  Defendants Strome and Rouch did not intervene in the premature discontinuation.

On December 11, 2012, Plaintiff was admitted to the prison's Acute Care Hospital due to excessive weight loss, acute renal failure and dehydration.  He was given IV fluids and prescribed a full liquid diet.

On December 12, 2012, Plaintiff was interviewed by Defendants Sao and Brooks, and he told them that in retaliation for his hunger strike, prison officials were withholding food since October 13, 2012.  On December 13, 2012, Defendants Sao and Brooks discharged Plaintiff with an order that he be placed on a 500-calorie per day diet of the liquid supplement "Glytrol." Plaintiff alleges that this was well below the 1,800 calorie daily minimum and caused him to lose excessive weight and experience significant pain.

Between December 13, 2012, and December 19, 2012, Plaintiff continuously asked Defendant Gill to increase his Glytrol to 1,800 calories.  Defendant Gill refused, again citing the higher-ups' policy to quickly end the hunger strike.

On December 20, 2012, Plaintiff was transported to CSP Hospital for a Hepatitis C consultation and the start of scheduled treatment.  Defendant Clark told Plaintiff that he would not begin treatment because of his hunger strike.  At this time, Plaintiff states that he has been on a solid-food hunger strike for over 120 days and Defendant Clark's refusal to begin treatment caused irreparable physical harm.

On January 11, 2013, during Plaintiff's medical consultation, Defendant Gill told Plaintiff that Defendant McCabe ordered him to immediately discontinue Plaintiff's diet of Boost as a

1    means to end the strike.  Defendant Gill did not do anything to intervene in Defendant McCabe's

2    premature discontinuation of Plaintiff's medically prescribed diet.

3    **B.    LEGAL STANDARD**

4           The failure to exhaust is subject to a motion for summary judgment in which the court

5    may look beyond the pleadings.  Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).  If the

6    Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without

7    prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

8           Defendants bear the burden of proof in moving for summary judgment for failure to

9    exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

10   administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

11   If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with

12   evidence showing that there is something in his particular case that made the existing and

13   generally available administrative remedies effectively unavailable to him."  Id.  This requires

14   Plaintiff to "show more than the mere existence of a scintilla of evidence."  In re Oracle Corp.

15   Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

16   242, 252, 106 S.Ct. 2505 (1986)).  "If the undisputed evidence viewed in the light most favorable

17   to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under

18   Rule 56."  Albino, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary

19   judgment should be denied, and the district judge rather than a jury should determine the facts."

20   Id.

21   **C.    UNDISPUTED FACTS[4]**

22          Plaintiff was housed at Corcoran State Prison during the times at issue.  ECF No. 10, at 4.

23   Both Corcoran and CDCR had an administrative exhaustion process available for Plaintiff to

24   submit medical and non-medical appeals.  Voong Decl. ¶ 2; Goree Decl. ¶ 2.

25

26   [4]  Plaintiff did not file an opposition, and therefore did not file his own separate statement of disputed facts or admit
     or deny the facts set forth by Defendants as undisputed.  Local Rule 260(b).  Therefore, Defendants' statement of
27   undisputed facts is accepted except where brought into dispute by Plaintiff's verified First Amended Complaint.
     Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is
     based on pleader's personal knowledge of specific facts which are admissible in evidence).

28

1   Corcoran makes CDCR Form 602 Inmate/Parolee Appeals available to all inmates in its

2   custody.  For inmates in the SHU, the appeals were in the housing unit and were passed out to

3   inmates with weekly supplies.  The forms could be requested.  Goree Decl.¶ 3.

4   All grievances received by the Corcoran Appeals Office are stamped when they are

5   received, whether they are accepted, screened-out or cancelled.  Goree Decl. ¶ 9.

6   In his verified responses to interrogatories, Plaintiff states that nothing prevented him

7   from fully exhausting his appeals.  Heath Decl., Ex. S at 4:1-28.

8   Plaintiff's responses to interrogatories and requests for production of documents indicate

9   that he submitted three appeals related to the allegations in the First Amended Complaint: COR

10   SC 12001402/COR HC 12052057, COR HC 12052052 and COR HC 12052256.  Heath Decl.,

11   Ex. S at 2:10-14, Ex. T at 2:1-10 and Exs. A-D, Ex. U at 7:6-14.[5]

12   Plaintiff's interrogatory responses and his initial disclosures state that he also submitted a

13   hand written document that he calls a rough draft.  Heath Decl. Ex. S at 2:10-14, Ex. T at 2:1-10,

14   Ex. U at 7:3-5.  The rough draft is dated October 17, 2012, and states, "I am a participant in the

15   'Solid Food' hunger strike and Prison Officials are still misinterpreting and/or ignoring OP 1057

16   by withholding my daily issued meals and falsely [stating] in my CDC 114A that I am refusing

17   my meals.  I request a thorough investigation into these allegations."

18   The draft was not written on an approved CDCR Form 602, and it was not stamped as

19   received by the appeal office.  Heath Decl. Ex. S at 2:10-14, Ex. T at 2:1-10 and Ex. A, Ex. U at

20   7:3-5.  CDCR's regulations require that "[t]he appellant shall use a CDCR Form 602 (REV.

21   08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief

22   requested.  Cal. Code Regs. tit. 15, § 3084.2(a).

23   *COR HC 12052057/COR SC 12001402 ("2057")*

24   Plaintiff submitted 2057 on November 25, 2012.  Heath Decl., Ex. T at Ex. B.  He stated

25   that as a result of his solid food hunger strike, medical staff performed daily examinations

26   between October 16 and October 27, 2012, and told him that he was fine even though he had

27

28   _____

[5] The Court is using Defendants' designations, which correspond to Plaintiff's page numbering.

1  constant abdominal pain.  The appeal further stated that on October 27, 2012, he was admitted to

2  Bakersfield Memorial Hospital, where doctors discovered that his abdominal pain was caused by

3  acute renal failure from his solid food hunger strike and the medical department's failure to place

4  him on a non-solid or liquid diet.  Heath Decl., Ex. T at Ex. B.

5       The Health Care Appeals Coordinator rejected 2057 because it made a general allegation

6  that did not name the staff that violated policy.  Heath Decl., Ex. T at Ex. B.

7       Plaintiff returned the rejection letter for 2057 with the names R.N. Faldon, R.N. Herrera

8  and R.N. Douglas written on it.  Williams Decl., Ex. I.

9       The First Level response partially granted 2057, stating that Plaintiff's daily assessments

10  performed by the nurses showed no complaints of abdominal pain, and he was seen in the TTA,

11  where there was no documentation of complaints of abdominal pain.  Williams Decl., Ex. I.

12       *COR HC 12052052 ("2052")*

13       Plaintiff submitted 2052 on November 24, 2012.  Plaintiff complained that medical staff

14  had mishandled his solid food hunger strike, which had been ongoing for 42 days.  He stated that

15  medical staff discontinued his non-solid/liquid diet and discharged him from the hospital.  He

16  further alleged that on November 15, 2012, he was placed on a 500 calorie-per-day liquid diet,

17  which was below the standard daily requirement, and that on November 18, 2012, medical staff

18  ordered it increased to 750 calories, but he did not receive it.  Plaintiff requested that his liquid

19  diet be increased to the standard daily caloric requirement.  Heath Decl. Ex. T at Ex. C.

20       Appeal 2052 was denied at the First Level on December 18, 2012, because Glytrol did not

21  need to be increased, as Plaintiff received two cans per day, was being seen on a regular basis,

22  and was advised of the importance of eating regularly.  Heath Decl. Ex. T at Ex. C.

23       Plaintiff appealed to the Second Level, stating that the decision not to increase his Glytrol

24  was an error because R.N. Casanada, endocrinologist Class and Defendant Gill increased his

25  liquid diet to the daily standard caloric requirement.  Williams Decl. Ex. H.

26       The appeal was denied at the Second Level on February 26, 2013.  The decision indicated

27  that Plaintiff was evaluated by Defendant Rouch and Gill, and Defendant Gill spoke with Medical

28  Administration and the dietician, who determined that there was no need for Glytrol.  The Second

1    Level response also stated that Plaintiff was offered a heart-healthy diet and a tray at every meal,

2    but it was his choice not to eat the food, and that his hunger strike had ended.  Williams Decl. Ex

3    H.

4         Plaintiff submitted the appeal to the Third Level, arguing that the documents showed that

5    the determinations at the First and Second Levels not to increase his liquid supplement were

6    incorrect, as physicians had increased it from three to eight cans per day.  Robinson Decl. Ex. E.

7         The Third Level denied the appeal on July 24, 2013, finding that Plaintiff was receiving

8    treatment deemed medically necessary, there was no medical indication for Glytrol and solid

9    foods were available to him.  Robinson Decl. Ex. E.

10        *COR HC 12052256 ("2256")*

11        Plaintiff submitted 2256 on December 24, 2012, complaining that he had chronic

12   Hepatitis C and needed treatment.  Plaintiff alleged that on December 20, 2012, Defendant Clark

13   told him that he was delaying treatment until Plaintiff abandoned his solid food hunger strike.

14   Plaintiff also complained that the medical department only had him on a 500-750 calorie-per-day

15   liquid diet since November 16, 2012.  Williams Decl. Ex G.

16        The appeal was denied at the First Level on January 23, 2013, finding that Plaintiff's issue

17   concerning Glytrol was addressed in 2052, and his supplement was discontinued because he was

18   on a self-initiated hunger strike.  Plaintiff's request for Hepatitis C treatment was denied because

19   he did not meet the criteria for treatment.  Williams Decl. Ex. G.

20        Plaintiff appealed to the Second Level, asking what he needed to do to obtain Hepatitis C

21   treatment.  Williams Decl. Ex. G.

22        The Second Level denied the appeal on March 21, 2013, stating that the Glytrol issue was

23   a duplicate of the issue in 2052.  His request for Hepatitis C treatment was denied under the

24   Exclusion Criteria because Plaintiff had diabetes mellitus and his hemoglobin A1c was greater

25   than 11.8.  The treatment was also denied because his self-imposed hunger strike and refusal to

26   eat solid food excluded him from treatment.  Williams Decl. Ex. G.

27        Plaintiff appealed to the Third Level, stating that between November 9, 2012, and

28   December 28, 2012, his hemoglobin level consistently decreased to within the 8.5 range, and

1    according to OP 1051, an inmate is no longer on a hunger strike once he receives liquid

2    supplements.  Plaintiff also stated that he began a regular diet in February 2013.  Robinson Decl.

3    Ex. F.

4         The appeal was denied at the Third Level on October 23, 2013, because Plaintiff's request

5    for Glytrol was a duplicate of 2052, he did not meet the criteria for Hepatitis C treatment and he

6    was receiving medical treatment deemed medically necessary.  Robinson Decl. Ex. F.

7         Plaintiff submitted numerous additional appeals, though none of them related to the

8    subject matter of this action.  Goree Decl. ¶¶11-17; Voong Decl. Exs. B, C; Kimbrell Decl. Exs.

9    J-L.

10   **D.**     **DISCUSSION**[6]

11       1.     Exhaustion Requirement

12        Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

13   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

14   confined in any jail, prison, or other correctional facility until such administrative remedies as are

15   available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all

16   inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983 (2002)

17   (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by

18   the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and unexhausted claims

19   may not be brought to court, Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910 (2007) (citing

20   Porter, 534 U.S. at 524).

21        The California Department of Corrections and Rehabilitation ("CDCR") has an

22   administrative grievance system for prisoners to appeal any departmental decision, action,

23   condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, §

24   3084.1.  During the relevant times, a prisoner must proceed through an initial informal level and

25   three formal levels of review, culminating in a third-level decision.  Cal. Code Regs. tit. 15, §

26    

_____

[6]  The First and Eighth Amendment medical claims against Defendant Clark, as well as the Eighth Amendment
27   medical claims against Defendants Strome, Sao, Gill and Rouch are not subject to the exhaustion challenge.  Certain
Defendants previously challenged the state law claims as unexhausted, but the motion was denied without prejudice
28   as going beyond the scope of a motion to dismiss.

1   3084.5.  In order to satisfy section 1997e(a), California state prisoners are required to use this

2   process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126

3   S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

4       2.    Analysis

5       It is undisputed that Corcoran provided an administrative remedies procedure to Plaintiff,

6   and that Plaintiff was not prevented from fully exhausting his claims.  It is also undisputed that

7   only two of the appeals were pursued through the Third Level of Review- 2052 and 2256.  To the

8   extent that Plaintiff believes that a hand-written draft exhausted his administrative remedies for

9   any claim, he is incorrect.  Proper procedural and substantive exhaustion of administrative

10   remedies is required, which demands compliance with an agency's deadlines and other critical

11   procedural rules.  Woodford v. Ngo, 548 U.S. 81, 90 (2006); Wilkerson v. Wheeler, 772 F.3d

12   834, 839 (9th Cir. 2014).

13       a.    *First Amendment Retaliation*

14       Plaintiff's First Amendment retaliation claims against Defendants Dougherty, Faldon,

15   Gill, Hayward, Herrera, Kaiser, McCabe, Molina, Quillen, Riley, Rocha, Rouch, Sao, Torres and

16   Strome are based on his contention that they withheld state-issued food, refused to increase his

17   liquid diet and/or discontinued his liquid diet in retaliation for his hunger strike.  The events

18   occurred between October 2012 and January 2013.

19       The undisputed facts show, however, that neither 2052 nor 2256 alleged retaliation by any

20   of these Defendants.  While 2052 refers to medical staff's discontinuation of his liquid diet and/or

21   the staff's failure to increase his liquid diet, Plaintiff does not in any way refer to a retaliatory

22   motive or identify any protected conduct.  See McClintock v. Colosimo, 2015 WL 1013689, *4

23   (E.D.Cal. 2015) (inmate appeal that did not include sufficient information to suggest conduct was

24   due to retaliation did not exhaust retaliation claim).

25       Moreover, although 2256 includes facts alleging retaliation, the appeal only discussed

26   Defendant Clark's withholding of medical treatment.

27       Plaintiff did not oppose this motion.  In his First Amended Complaint, he simply states

28   that he exhausted all of his administrative remedies.  ECF No. 10, at 3.  Such vague, conclusory

1  statements, without specific evidence, are not sufficient to carry Plaintiff's burden on summary

2  judgment.

3       The Court finds that Plaintiff has failed to exhaust his retaliation claim against Defendants

4  Dougherty, Faldon, Gill, Hayward, Herrera, Kaiser, McCabe, Molina, Quillen, Riley, Rocha,

5  Rouch, Sao, Torres and Strome.

6

7           b.      *Eighth Amendment Conditions of Claim Against Defendants Faldon,*
                    *Hayward, McCabe, Molina, Quillen, Riley, Torres and Rocha*

8

9       It is undisputed that none of Plaintiff's properly exhausted appeals discussed the alleged

10  withholding of state issued food by Defendants Faldon, Torres, Quillen, Molina, Hayward, Riley

11  and Rocha.  It is also undisputed that none of his properly exhausted appeals included any

12  specific claims that Defendant McCabe directed staff to discontinue his liquid supplement in

13  order to crush his hunger strike.  Griffin v. Arpaio, 557 F.3d 1117, 1121 (9th Cir. 2009).

14       These claims are therefore unexhausted.

15

16           c.      *Eighth Amendment Medical Claim Against Defendants Faldon,*
                    *Dougherty, Herrera and Kaiser*

17       Plaintiff alleges that Defendants Faldon, Dougherty, Herrera and Kaiser were informed

18  that prison officials were withholding food, but failed to intervene despite his constant and

19  excessive weight loss.

20       It is undisputed, however, that neither of his two fully and properly exhausted appeals

21  made these allegations.  In 2057, Plaintiff contended that medical staff said he was fine despite

22  abdominal pain.  This appeal, however, was not pursued past the First Level, where it was

23  partially granted on the basis that an inquiry was conducted and determined that the nurses'

24  assessments showed no abdominal pain.  Plaintiff did not pursue the appeal through the

25  remaining levels, and the claims are therefore unexhausted.

26  ///

27  ///

28  ///

**E.    FINDINGS AND RECOMMENDATIONS**

Accordingly, the Court RECOMMENDS that Defendants' motion for partial summary judgment be GRANTED, and the following claims be DISMISSED WITHOUT PREJUDICE as unexhausted:

1.    The First Amendment retaliation claim against Defendants Dougherty, Faldon, Gill, Hayward, Herrera, Kaiser, McCabe, Molina, Quillen, Riley, Rocha, Rouch, Sao, Torres and Strome;

2.    The Eighth Amendment conditions of confinement claim against Defendants Faldon, Hayward, McCabe, Molina, Quillen, Riley, Torres and Rocha; and

3.    The Eighth Amendment medical claim against Defendants Faldon, Dougherty, Herrera and Kaiser.[7]

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:    **August 23, 2016**                     /s/ *Dennis L. Beck*
                                               UNITED STATES MAGISTRATE JUDGE

---

[7]  In the conclusion of their brief, Defendants argue that the state law claims against certain Defendants are unexhausted.  As noted above, however, Defendants did not include any argument relating to these claims in this motion.  The Court previously denied a prior exhaustion challenge to the state law claims without prejudice.